# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DAVID NAUGHTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N19C-01-095 JRJ |
| | ) | |
| GEM AMBULANCE, LLC, | ) | |
| and PROGRESSIVE CASUALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted:  February 2, 2021
Date Decided:  April 29, 2021

*Upon Defendants Gem Ambulance, LLC, and Progressive Casualty Insurance Company's Motions for Summary Judgment*: **GRANTED.**

Michael P. Minuti, Esquire, McCann & Wall LLC, 300 Delaware Avenue, Suite 805, Wilmington, Delaware 19801, Attorney for Plaintiff.

Roger D. Landon, Esquire, Murphy & Landon, 1011 Centre Road, Suite 210, Wilmington, Delaware 19805, Attorney for Defendant Gem Ambulance, LLC.

Kenneth M. Doss, Esquire, Casarino Christman Shalk Ransom & Doss, P.A., 1007 North Orange Street, Suite 1100, Wilmington, DE 19899, Attorney for Defendant Progressive Casualty Insurance Company.

**Jurden, P.J.**

# I. INTRODUCTION

This action arises from a no-contact motorcycle accident involving Plaintiff David Naughton ("Naughton").[1]  Naughton alleges that an ambulance owned and operated by GEM Ambulance, LLC ("GEM") forced his motorcycle off the road, causing him significant injuries.[2]  Naughton brings this action against GEM under the *respondeat superior* theory of liability,[3] alleging that GEM's employee and/or agent acted negligently by (1) failing to maintain proper control of the ambulance, (2) operating the ambulance in a careless and/or imprudent manner without due regard for then-existing road and traffic conditions, and (3) failing to maintain a proper lookout.[4]  Naughton has also sued his uninsured motorist insurer Progressive Casualty Insurance Company ("Progressive"), alleging that Progressive must stand in the shoes of the uninsured phantom vehicle involved in the accident and is therefore liable to Naughton for the damages that he sustained.[5]

Defendants have moved for summary judgment.  GEM argues that the ambulance involved in Naughton's accident was neither owned nor operated by GEM or an agent of GEM and that there is no evidence to the contrary.[6] Progressive,

---

[1] Plaintiff's Amended Complaint ("Am. Compl.") ¶ 6 (Trans. ID 63005206).
[2] *Id.* ¶ 17.
[3] *Id.* ¶¶ 17-19.
[4] *Id.* ¶ 15.
[5] *Id.* ¶ 22.
[6] Defendant GEM Ambulance's Motion for Summary Judgment ("GEM Mot. Summ. J.") ¶ 3 (Trans. ID 65951875).

and GEM in the alternative, argues that because Naughton failed to plead sufficient facts to prove the ambulance breached a duty owed to other drivers, and because Naughton proximately caused the accident, Defendants are entitled to judgment as a matter of law.[7]

For the reasons set forth below, Defendants' Motions for Summary Judgment are **GRANTED**.

## II. BACKGROUND

On March 29, 2017, Naughton was operating a motorcycle at the intersection of westbound Lancaster Pike and North Clayton Street in Wilmington, Delaware.[8] Naughton began to slow down for an ambulance that was approaching the intersection with its lights and sirens activated, but he realized that the ambulance appeared to be stuck in traffic.[9] Believing that he had time to clear the intersection, Naughton sped up to drive through the intersection.[10] At the same time, the ambulance drove around the stopped cars and entered the intersection directly in the path of Naughton.[11] To avoid colliding with the ambulance, Naughton "dropped" his bike thereby causing him to be trapped under the right side of the motorcycle.[12]

---

[7] GEM Mot. Summ. J. ¶ 10; Progressive's Motion for Summary Judgment ("Prog. Mot. Summ. J.") ¶ 14 (Trans. ID 65898215). Progressive takes no position on co-defendant GEM's Motion for Summary Judgment. (Trans. ID 65994062).
[8] Am. Compl. ¶ 6.
[9] *Id.* ¶ 7.
[10] GEM Mot. Summ. J. ¶ 2.
[11] Am. Compl. ¶ 8.
[12] *Id.* ¶ 9.

Naughton called the Wilmington Police Department, and an officer reported to the scene, but the officer was unable to determine the identity of the ambulance company.[13] Naughton asserts that he sued GEM because he believed that the ambulance involved in the accident was green in color[14] and that the ambulance may have been traveling to Saint Francis Hospital based on the proximity of the accident scene to that hospital.[15]

## III. PARTIES' CONTENTIONS

### A. Defendant Progressive Insurance

Defendant Progressive moves for summary judgment on two grounds—that Naughton is unable to prove that the ambulance driver breached its duty of care

---

[13] *Id.* ¶¶ 11-12.

[14] Naughton testified that he is familiar with the appearance of GEM Ambulances because his mother has been transported by GEM Ambulances when she was ill. Plaintiff's Response to GEM's Mot. Summ. J. ("Pl.'s Response to GEM Mot.") ¶ 8 (Trans. ID 65988514) (citing Plaintiff's Deposition Transcript ("Pl.'s Dep. Tr.") 86:15-87:10). When asked to describe what the ambulance looked like, Naughton testified, "I just remember – you know, its not a tremendous recollection but just a big green what I would call like a box truck." *See* Pl.'s Dep. Tr. 34:8-12. When asked to describe the shade of green on the ambulance, Naughton testified, "As I'm sitting here I would say dark [green] but I can't be positive. I can't be positive that it was dark or light." *See* Pl.'s Dep. Tr. 34:15-21. Naughton was unable to recall how much of the ambulance was green or if there was any writing on the ambulance. *See* Pl.'s Dep. Tr. 34:23-35:6.

[15] Am. Compl. ¶ 13. Naughton testified that he originally named Saint Francis Hospital as a party to this suit because the ambulance involved in his accident "was heading towards [Saint Francis Hospital] and [. . . ] I've seen those ambulances that color that looked like that bring people in to [Saint Francis Hospital], and so I think I may, you know, generally just said, you know, it may have been a [Saint Francis Hospital] ambulance and that's how I came to that – definitely resembled ambulances I've seen at [Saint Francis Hospital] for sure, just like GEM." *See* Pl.'s Dep. Tr. 86:15-22; 87:3-10.

under 21 *Del. C.* § 4106 and that Naughton, not the ambulance driver, was the proximate cause of his own accident.[16]

Progressive first argues that the phantom ambulance driver met the duty owed by drivers of emergency vehicles under 21 *Del. C.* § 4106(d), which reads:

> The driver of an emergency vehicle is not liable for any damage to or loss of property or for any personal injury or death caused by the negligent or wrongful act or omission of such driver except acts or omissions amounting to gross or willful or wanton negligence so long as the applicable portions of subsection (c) of this section have been followed.

Subsection (c) of 21 *Del. C.* § 4106 exempts emergency vehicles from liability for mere negligence only if the emergency vehicle is "making use of audible or visual signals meeting the requirements of this title[.]"[17] Here, it is undisputed that the alleged ambulance driver made use of the vehicle's emergency lights and sirens, so the vehicle qualifies as an "emergency vehicle" under the statute.[18] With respect to its argument that the ambulance driver met the duty required under Section 4106(d), Progressive contends that Naughton has not and cannot claim that the ambulance driver was grossly negligent or acted in a manner amounting to willful or wanton

---

[16] Prog. Mot. Summ. J. ¶ 5.

[17] 21 *Del. C.* § 4106(c).

[18] Pl.'s Dep. Tr. 19:8-9. Progressive argues that evidence that an emergency vehicle activated its lights and sirens while slowing down or stopping at red light traffic before proceeding through an intersection is sufficient to show the driver's compliance with 21 *Del. C.* § 4106(c). Prog. Mot. Summ. J. ¶¶ 7-8 (citing *Ballard v. Cesner*, 2005 WL 1654333, at *1 (Del. Super. July 15, 2005)).

5

conduct.[19]  For this reason, Progressive argues that the ambulance driver cannot be held liable for his actions and, thus, Naughton's claim must fail.[20]

Second, Progressive argues that it was Naughton's failure to yield the right-of-way pursuant to 21 *Del. C.* § 4134(a), not the ambulance driver's conduct, that was the proximate cause of his accident.[21]  21 *Del. C.* § 4134(a) requires that,

> [u]pon the immediate approach of an authorized emergency vehicle making use of audible or visual signals . . . the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway clear of any intersections and shall relinquish the right-of-way until the authorized emergency vehicle has passed[.]

Progressive claims that Naughton failed to yield the right-of-way to the ambulance because he attempted to continue through the intersection despite hearing and seeing emergency signals and watching the ambulance attempting to maneuver around traffic.[22]  Because Naughton had a duty to yield under 21 *Del. C.* § 4134(a) but failed to do so, Progressive argues, Naughton's conduct is the only proximate cause of his accident.[23]

## B.  Defendant GEM Ambulance

---

[19] Prog. Mot. Summ. J. ¶¶ 9-10.  Progressive argues the record lacks any evidence to support a hypothetical claim that the ambulance driver was grossly negligent.  *Id.* ¶ 10.
[20] *Id.* ¶¶ 11-12.
[21] *Id.* ¶¶ 12-13.
[22] *Id.* ¶ 14.
[23] *Id.*

Defendant GEM's argument on summary judgment is that Naughton's *respondeat superior* claim must fail because the ambulance was neither owned nor operated by GEM, nor was it being operated by an agent of GEM.[24] GEM points to Naughton's concession that he was unable to discern the identity or owner of the ambulance involved in his accident.[25] GEM argues that Naughton has filed suit against GEM for an accident that GEM was not involved in because of his previous familiarity with GEM Ambulance[26] and a few minor aesthetic similarities between the ambulance involved in Naughton's accident and GEM's ambulances; in other words, GEM maintains, this is a case of mistaken identity.[27] GEM argues that Naughton was unable to provide a description of the ambulance involved in the accident identifying it as a GEM ambulance.[28] All that Naughton could offer to identify the ambulance was that the vehicle was "a big green . . . box truck [ambulance]."[29] Naughton testified that he could not recall seeing the word "GEM" or any other writing on the ambulance and could not describe the shade of green or how much of the ambulance was painted green.[30]

---

[24] GEM Mot. Summ. J. ¶ 3.

[25] *Id.* ¶ 3 (citing to Pl.'s Dep. Tr. 37:15-18).

[26] GEM points to Naughton's brief and limited description of the ambulance involved in the accident to show that Naughton sued GEM only because he was familiar with GEM ambulances from 2015, when GEM had transported Naughton's sick mother numerous times. *Id.* ¶ 6.

[27] *Id.*

[28] *Id.*

[29] *Id.* (citing Pl.'s Dep. Tr. 34:11-12); *see also* Pl.'s Dep. Tr. 19:8, 22:4, 84:15-87:15.

[30] *Id.*

According to the testimony of GEM's corporate designee, GEM owns and operates two types of ambulances, including the big-box type, the kind that Naughton described, but these ambulances are used only for transport in the State of Delaware.[31] GEM is not authorized to respond to emergencies in Delaware, so although all GEM ambulances are equipped with emergency signals, drivers are not authorized to activate the signals while driving in Delaware.[32] Further, GEM maintains that there is no evidence that a GEM ambulance was in the location where the accident took place at the time the accident occurred. Based on GEM's computer-aided dispatch system ("CAD"), there were five GEM ambulances in the general Wilmington area around the time of Naughton's accident.[33] Only one of the five was the big-box type of ambulance that Naughton described as having been involved in the accident, and that particular ambulance marked its arrival at a destination approximately 6.4 roadway miles from the accident location, thirteen minutes prior to the accident, and called in "complete" two minutes after the accident.[34] Precise GPS data of the routes driven by each GEM ambulance is purged every 90 days, so the route taken by this particular ambulance on the day of Naughton's accident is unavailable.[35]

---

[31] *Id.* ¶ 7. Naughton does not dispute the testimony given by GEM's corporate designee, Michael Hynes.
[32] GEM Mot. Summ. J. ¶ 7.
[33] *Id.* ¶ 8.
[34] *Id.*
[35] *Id.*

Alternatively, GEM adopts and incorporates by reference the legal arguments put forth by Progressive in its Motion for Summary Judgment regarding the applicable standards of care and liability of the ambulance driver and the proximate cause of the accident.[36]

## C. Naughton's Response

First, in response to GEM's claim of mistaken identity, Naughton raises the possibility that a GEM ambulance driver operated a GEM ambulance outside the bounds of his or her employment by wrongfully activating the emergency signals in order to enter the intersection and avoid the traffic.[37] Naughton argues that a genuine issue of material fact exists as to the owner and operator of the ambulance because there is no evidence in the record that any other ambulance was responding to emergency calls in the area around the time of the accident.[38]

For this reason, Naughton also argues that GEM and Progressive's reliance on the immunity privileges of 21 *Del. C.* § 4106 and § 4134 are misplaced.[39] Assuming, *arguendo*, that a GEM ambulance was involved in the accident,

---

[36] *Id.* ¶ 9.

[37] Pl.'s Response to GEM Mot. ¶ 3.

[38] *Id.* ¶¶ 9-10.  In its Motion for Summary Judgment, GEM points out that Plaintiff was unaware that one other ambulance company in the area, Mill Creek Fire Department, also had green ambulances. *See* GEM Mot. Summ. J. ¶ 6. Plaintiff argues GEM could have attempted but failed to offer any evidence that Mill Creek ambulances were in the area of the accident or near the closest hospital, St. Francis, around the time of the accident.  Pl.'s Response to GEM Mot. ¶¶ 9-10.

[39] Pl.'s Response to GEM Mot. ¶¶ 11-18.

9

Naughton claims that GEM cannot rely on the immunity privileges afforded to emergency vehicles under 21 *Del. C.* § 4106 or § 4134 because the ambulance involved could not qualify as an "emergency vehicle" at the time of the accident.[40] Based on GEM's testimony that its ambulances are not authorized to respond to emergency calls in Delaware, Naughton argues that when the ambulance drove through the intersection with its emergency signals activated, it was not doing so in response to a true emergency and so should not receive statutory immunity.[41]  For this same reason, Naughton refutes the claim that he failed to yield the right-of-way, arguing that the ambulance did not have the right-of-way because the driver was not responding to an emergency call.[42]

## IV.  DISCUSSION

### A.  Standard of Review

On a motion for summary judgment, the Court views all facts in a light most favorable to the non-moving party and determines whether a genuine issue of material fact exists.[43]  Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of

---

[40] *Id.* ¶¶ 11-16.
[41] *Id.*
[42] Plaintiff's Response to Prog. Mot. Summ. J. ("Pl.'s Response to Prog. Mot.") ¶ 19 (Trans. ID 65959449) ("[P]er its corporate designee, [GEM]'s ambulances do not respond to emergency calls in Delaware.  So there simply was no 'emergency' in this case.").
[43] *Marrero v. State Farm Fire & Cas. Co.*, 2015 WL 5440513, at *2 (Del. Super. Ct. Sept. 14, 2015) (quotations omitted) (citation omitted).

10

law.[44]  If the record reveals that there is a material fact in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the facts of the case, then summary judgment must be denied.[45]

### B.  Liability of the Ambulance Driver Under 21 *Del. C.* § 4106 & § 4134

Naughton's argument that the ambulance driver's wrongful conduct precludes Defendants' claim to statutory immunity is not supportable.  It is speculation on top of speculation.  Naughton cannot create a genuine issue of material fact by speculating and surmising.[46]

With respect to the ambulance driver's liability under 21 *Del. C.* § 4106, Naughton has pled neither gross negligence nor willful or wanton conduct on the part of the ambulance driver.[47]  21 *Del. C.* § 4106 permits liability for an emergency

---

[44] Super. Ct. Civ. R. 56(c).

[45] *Marrero*, 2015 WL 5440513, at *2 (citation omitted).

[46] *In re Asbestos Litig.*, 2007 WL 1651968, at *16 (Del. Super. May 31, 2007) ("Where there is no precedent fact, there can be no inference; an inference cannot flow from the nonexistence of a fact, or from a complete absence of evidence as to the particular fact. Nor can an inference be based on surmise, speculation, conjecture, or guess, or on imagination or supposition.").

[47] In fact, Naughton testified at his deposition that the driver "was doing everything they probably should have done professionally if the car was in the way" when describing the driver's efforts to maneuver around the traffic in front of it and proceed through the intersection.  Pl.'s Dep. Tr. 32:6-11.  At oral argument, Plaintiff's counsel stated that he believed that Naughton was referring only to the ambulance driver's use of lights and sirens, not the drivers' driving actions,  when Naughton testified the driver "was doing everything they probably should have done professionally if the car was in the way."  Naughton made no indication in his testimony that he was referring only to the ambulance driver's use of lights and sirens.  Read in its totality, Naughton's statement appears to describe the actions taken by the driver, including but not limited to the use of lights and sirens. *See* Pl.'s Dep. Tr. 31:20-32:11.

> Q: So when you first hear the siren you don't see the ambulance immediately; correct?
>
> A: Yeah. That's true.

vehicle driver only if the driver has been grossly negligent or demonstrated willful or wanton conduct. For this reason, Naughton's claim against GEM and Progressive must fail under 21 *Del. C.* § 4106.

With respect to the claim that Naughton failed to yield the right-of-way, 21 *Del. C.* § 4134(a) provides that drivers must yield the right-of-way to clear roadways and intersections "[u]pon the immediate approach of an authorized emergency vehicle making use of audible or visual signals[.]"[48] Moments before his accident occurred, Naughton saw what he believed to be an emergency vehicle with its lights and sirens activated attempting to enter the intersection that he was in.[49] It is clear that he failed to yield the right-of-way to the emergency vehicle, as is required by statute, when he continued through the intersection.[50] Because Naughton failed to comply with 21 *Del. C.* § 4134, his claim against GEM and Progressive must fail.

---

> Q: And as you are getting sort of near the intersection, that's when you first notice the ambulance off to your left; right?
>
> A: The siren first, then the lights. The closer I get to the green light, ten, fifteen yards, I can see it now and it's trying to get through.
>
> Q: Okay. So he's using both his lights and his sirens – his flashing lights and his siren, then, whoever's driving the ambulance?
>
> A: I think he or she was doing everything they probably should have done professionally if the car was in the way.

[48] 21 *Del. C.* § 4134(a).

[49] *See Green v. Millsboro Fire Co., Inc.*, 403 A.2d 286, 289 (Del. 1979) ("[B]efore a violation of 21 *Del. C.* § 4134 can be established it must first be established that plaintiff was aware or should have been aware of the emergency vehicle.").

[50] At oral argument on February 2, 2021, Naughton's counsel agreed that Naughton had a duty to yield to the ambulance if he deemed it an emergency vehicle and that nothing in the record suggested that Naughton did not believe that the ambulance was an emergency vehicle.

## C. Identity of the Ambulance Involved in Naughton's Accident

On this Motion for Summary Judgment, GEM bears the initial burden of showing that there are no genuine issues of material fact.[51] If and when GEM is able to meet its initial burden, the burden then shifts to Naughton to demonstrate that a genuine issue of material fact does exist.[52] GEM has met its burden. GEM has produced testimony from its corporate designee stating that GEM is not authorized to conduct emergency transport or activate its vehicles' emergency lights and sirens in the State of Delaware, it provided a map showing the location of the five GEM ambulances in the general Wilmington area around the time Naughton's accident occurred, none of which were near the scene, and it identified at least one other ambulance company in the area with green ambulances, Mill Creek Fire Company.[53] The burden now shifts to Naughton to demonstrate that a genuine issue of material fact does exist.[54]

---

[51] *See Kovach v. Brandywine Innkeepers Ltd. P'ship*, 2000 WL 703343, at *1 (Del. Super. Apr. 20, 2000); *see also Talmo v. Union Park Automotive*, 2011 WL 5335391, at *2 (Del. Super. Nov. 1, 2011).

[52] *Id.*; *see also Talmo*, 2011 WL 5335391, at *2 ("On a motion for summary judgment, the moving party bears the initial burden of showing that there are no material facts in dispute. If the moving party meets this burden, then the burden shifts to the non-moving party to set forth specific facts in its response to the motion for summary judgment that go beyond the bare allegations of the complaint.").

[53] GEM Mot. Summ. J. ¶¶ 6-8.

[54] *In re Asbestos Litig.*, 2007 WL 1651968, at *16 ("The moving party bears the initial burden of demonstrating that the undisputed facts support his claims or defenses. If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for resolution by the ultimate fact-finder[.]").

The only evidence in the record supporting Naughton's claim that GEM is liable is his testimony that the "ambulance was green in color"[55] and a CAD data entry showing that a GEM ambulance engaged in a call 6.4 miles away from the scene of the accident at the time the accident occurred.[56] Naughton does not dispute the testimony provided by GEM's corporate designee as to the location of the closest GEM big-box ambulance 6.4 miles away from the scene of the accident before and after the accident occurred.[57] Rather, Naughton posits that material facts remain unresolved because there is no data available to show whether any of the five GEM ambulances in Delaware were within one mile of the scene of the accident on the day it occurred and because the data entry showing the location of the GEM ambulance 6.4 miles away from the scene of the accident was dependent on the ambulance driver accurately reporting his arrival and departure.[58]

Naughton attempts to create a genuine issue of material fact regarding whether the ambulance was GEM owned and operated by arguing that (1) GEM failed to provide evidence that another ambulance was operating within the area when the accident occurred; (2) GEM identified only one additional ambulance company in Delaware with green ambulances, but this company does not operate in the area

---

[55] Am. Compl. ¶ 13; *see* Pl.'s Dep. Tr. 34:11-12.
[56] GEM Mot. Summ. J. ¶ 8.
[57] At oral argument on February 2, 2021, Naughton's counsel stated that he has no reason to dispute the credibility of the testimony provided by GEM's corporate designee.
[58] Naughton's counsel offered this theory at oral argument on February 2, 2021.

where the accident occurred; and (3) GEM was unable to show that any other ambulance company had been traveling to or from the closest hospital to the accident scene when the accident occurred.[59]

These arguments do not satisfy Naughton's burden to set forth facts showing the ambulance was a GEM ambulance.[60] Naughton has not produced evidence to show that there may have been a GEM ambulance close to the scene of the accident when it occurred. He merely casts unsubstantiated assumptions on the evidence provided by GEM.[61] At this stage, it is Naughton's burden, not GEM's, to set forth facts showing that the ambulance was GEM owned and operated.[62] Naughton has not produced sufficient evidence to show a genuine issue of material fact—in other words, evidence that could allow a reasonable jury to return a verdict in his favor.[63] For this reason, Naughton's claim against GEM must fail.

## V. CONCLUSION

For the forgoing reasons, the Court finds that Naughton has failed to demonstrate a genuine issue of material fact, and as such, Defendants are entitled to

---

[59] Pl.'s Response to GEM Mot. ¶¶ 4-10.
[60] *Kovach,* 2000 WL 703343, at *1 ("The Court's decision [on a motion for summary judgment] must be based solely on the record presented and not on all evidence 'potentially possible.'").
[61] At oral argument on February 2, 2021, Naughton's counsel conceded it is not GEM's burden to prove the negative of Naughton's argument.
[62] *Talmo*, 2011 WL 5335391, at *2.
[63] *Gibson v. Metropolitan Grp. Prop. & Casualty Ins. Co.*, 2017 WL 5606714, at *3 (Del. Super. Nov. 15, 2017).

15

judgment in their favor as a matter of law.  Consequently, Defendants' Motions for Summary Judgment are **GRANTED**.

**IT IS SO ORDERED.**

*Jan R. Jurden*

_____

Jan R. Jurden, President Judge

cc:  Prothonotary